## Curran's Estate.

Argued April 18, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, DREW and LINN, JJ.

418

*Bryan A. Hermes,* with him *Nathan Griffith* and *Alfred J. Snyder,* for appellant.

*R. M. Remick,* of *Saul, Ewing, Remick & Saul,* with him *Elmer C. Pfeiffer,* for trustees, appellees.

*J. Edgar Wilkinson,* of *Acker, Manning & Brown,* for executor, appellee.

OPINION BY MR. JUSTICE LINN, June 30, 1933:

Three complaints are made: 1, that the court refused to hold that an investment made by accountants was not a legal investment; 2, that the court refused to surcharge accountants with loss resulting from failure to convert into legal investments certain nonlegal investments made by the testator; 3, that the fund for distribution was awarded to the executor of the donee of the power and not to the donee's appointees.

Henry B. Curran died in 1907. By his will, the part of his estate here involved passed to accountants (The Pennsylvania Company for Insurances on Lives and Granting Annuities, and William M. Davidson, Jr., testator's son-in-law) in trust to pay the income to his widow for life, with power to dispose of the principal by will. She died June 23, 1931, testate, but without specifically disposing of the property, which therefore passed by implication (section 11 of Wills Act, 1917, P. L. 403) to her residuary legatees, of whom Laura A. Hill, the appellant, is one.

1. The first complaint arises out of an investment of $3,000 made by accountants February 21, 1929, in Harry J. Ulrich First Mortgage 6s, due February 1, 1934. Walnut and Quince Streets Corporation owned certain real

estate at Walnut and Quince Streets, Philadelphia, and conveyed it to Harry J. Ulrich, a clerk in the employ of the Real Estate-Land Title and Trust Company. That company insured the title and made a loan of $600,000 secured by first mortgage on said real estate. On the same day on which the conveyance was made to Ulrich, he executed and delivered to the Pennsylvania Company for Insurances on Lives and Granting Annuities, as trustee for bondholders, a mortgage of the property in the sum of $600,000, and, to secure the repayment of that sum in accord with the terms of the mortgage, executed 600 bonds of $1,000 each, for the payment of which he is liable to the holders. He then reconveyed the property to the Walnut and Quince Streets Corporation, under and subject to the mortgage. The Pennsylvania Company for Insurances on Lives and Granting Annuities purchased the entire issue for various accounts, one being the estate of Emma P. Hope, deceased, which became owner of three bonds. Subsequently, the accountants bought these three bonds at par from the Hope estate as an investment of trust funds of decedent's estate. Before making the purchase of the entire issue, the trustee obtained the written opinion of counsel (inter alia) that the bonds were a legal investment for trust funds; had the property appraised; and made inquiries into the income, etc., of Shubert Theatre Corporation, which had guaranteed the payment of principal and interest of the bonds, and which operated the Forrest Theatre, constructed on the premises. It may be noted that the mortgage in question was, in amount, as the learned auditing judge found, "slightly less than 60% of the value placed upon the property at the time it was executed"; it was less than "⅔ of the fair value of such real estate" the limit imposed by the subsequent amendment of 1929.

No suggestion is made, in the statement of questions involved, concerning the propriety of or want of care in making the investment; the single complaint is that it is an investment in the bonds of a private corporation,

and therefore is not a legal investment permitted by the Act of June 29, 1923, P. L. 955, amending section 41 (a) of the Fiduciaries Act of 1917, P. L. 447. To that point we limit our review.

Article III, section 22, of the Constitution provides: "No act of the General Assembly shall authorize the investment of trust funds by executors, administrators, guardians or other trustees in the bonds or stock of any private corporation, and such acts now existing are avoided, saving investments heretofore made."

Section 41 (a) of the Fiduciaries Act as amended in 1923 is as follows: "1. When a fiduciary shall have in his hands any moneys, the principal or capital whereof is to remain for a time in his possession or under his control, and the interest, profits, or income whereof are to be paid away or to accumulate, or when the income of real estate shall be more than sufficient for the purpose of the trust, such fiduciary may invest such moneys ......in bonds of one or more individuals secured by mortgage on real estate in this Commonwealth, which may be either a single bond secured by a mortgage or one or more bonds of an issue of bonds secured by mortgage or deed of trust to a trustee for the benefit of all bondholders, or in ground rents in this Commonwealth. ......"

Section 41, paragraph 3, of the Fiduciaries Act of 1917, at page 509, provides: "In case the said moneys shall be invested as set forth in paragraph one of this clause,......the said fiduciary shall be exempted from all liability for loss on the same, in like manner as if such investments had been made in pursuance of directions in the will creating the trust, it being hereby declared the investments mentioned in this section are legal investments of moneys by fiduciaries."

In Maroney's Est., 311 Pa. 336, an investment of trust funds by a fiduciary in a bond and a mortgage to the fiduciary, made by a private corporation, was challenged, and it was held that the Constitution did not prohibit

investment of trust funds in real securities, but that the prohibition was directed against investment in personal securities. The origin of this classification of securities, and the well recognized distinction between them, was referred to, and it was concluded that the investment of trust funds in a mortgage of real estate, admittedly a real security, even if executed by a private corporation, was not prohibited by the Constitution and that, as it was specifically provided for by the statute, it was a legal investment. We need not repeat what was so recently stated on the subject.

One element of the complaint is that Ulrich was merely an employee of the title insurance company and that title was conveyed to him for the express purpose of executing the mortgage and the bonds, and then reconveying the property of the former corporate owner, under and subject to the mortgage. The result, appellant contends, makes the instruments in fact the mortgage and bonds of the corporation, and, therefore, prohibited by the Constitution as the bonds of a private corporation. We cannot accept that argument, because it ignores essential facts in the transaction, particularly the fact of the mortgage in the sense that it is a real security. It is immaterial that Ulrich was a trustee or a straw man. The important question is, is there a mortgage of real estate, a real security? Ulrich's mortgage exists. The terms of the mortgage, as well as the obligation in his bonds, are enforcible, the one against the land, the other against him. Moreover, the instruments are directly within the statute; the investment is "in bonds of one or more individuals secured by mortgage on real estate in this Commonwealth, which may be either a single bond secured by a mortgage, or one or more bonds of an issue of bonds secured by mortgage or deed of trust to a trustee for the benefit of all bondholders." To avoid the plain effect of that provision, appellant contends (in the words of the brief) that "the 'mortgage' referred to in both the Act of 1917 and 1923 meant mortgages of land

in common form...... [foreclosable by] ......action on the bond or a scire facias on the mortgage." But no reason is suggested for so restricting the obviously more comprehensive meaning of words used by the legislature. No principle of statutory construction will permit this court so to limit the scope of the word mortgage where the context shows that it was used in its general and well understood meaning. The words "mortgage or deed of trust to a trustee for the benefit of all bondholders" show conclusively that a scire facias form mortgage was not alone intended but that the word was used in its much broader sense. We must reject the argument as without support, and, therefore, with it must go the accompanying criticism of the provisions of the mortgage containing the duties and responsibilities of the trustee, as appellant frankly states that "the *constitutionality* of the Act of 1923" is not "involved; it is merely the *construction* of that act." As was stated before, the propriety of such investment is not presented for review.

Appellant also refers to Com. ex rel. v. McConnell, 226 Pa. 244, 75 A. 367, decided in 1910, in which the statute, controlling the performance of the committee's duties, was the act "Relating to Lunatics and Habitual Drunkards," approved June 13, 1836, P. L. 589, the 34th section of which (P. L. 599) provides: "It shall be lawful for any committee as aforesaid, by the leave and under the direction of the court of common pleas having jurisdiction, as aforesaid, to invest the money of a lunatic or habitual drunkard, in such stocks, or upon such security, as shall be approved of by such court, and if such investment be made, bona fide, the committee making the same shall not be liable for any loss that may arise thereby."

At the audit of the account of the committee of a lunatic, the committee was surcharged with loss resulting from an investment in bonds of a private corporation. The investment was not made "by leave and under

the direction of the court of common pleas......" (supra) and the surcharge was accordingly affirmed. In the course of the opinion of this court, written by the late Mr. Justice MESTREZAT, the bonds in which the fund was invested were treated as personal securities. There is no discussion of the fact that the bonds were secured by a mortgage of real estate, nor, from what appears in the opinion, does the effect of that fact appear to have been called to the attention of the court. As there can be no doubt that an investment in a mortgage of land is a real security, as was held in Maroney's Est., supra, following decisions going back over a century, and, as a real security is obviously not within the constitutional prohibition of investment in personal securities, anything to the contrary suggested by the opinion filed in Com. v. McConnell must give way to the more considered views of this court. An investment in a real security is none the less such investment, if the debt is also represented by an accompanying obligation, whether bond, note or otherwise appropriate. The first complaint is dismissed.

2. The second complaint results from the retention of certain bonds purchased by the testator, Curran, and awarded to accountants, as trustees, by the adjudication of the executor's account filed December 17, 1908. No default on these bonds has occurred, though the market price is less than the appraised value at which they were taken. On this branch of the case evidence was taken to show that the trustees retained the securities "in the honest exercise of normally good judgment, based on actual consideration of existing conditions": Taylor's Est., 277 Pa. 518, 121 A. 310; Brown's Est., 287 Pa. 499, 135 A. 112. The life tenant, having the general power of appointment, in a sense had complete dominion over the property (Lyon v. Alexander, 304 Pa. 288, 156 A. 84) as she could appoint to her own estate. There is evidence that she was advised by the trustee, as late as 1925, that part of the corpus was in nonlegal investments, and, an-

nually from 1909 to 1930, was furnished with reports, showing income received and distributed, and sales of securities during the period of the report. Certainly if, in the circumstances, with full knowledge of the facts and of her rights, Mrs. Curran was content, her appointees will not be heard to complain. On all the evidence on this phase of the case, the learned auditing judge found as a fact there was "neither neglect nor inattention on the part of the trustees. The retention of the securities in question was the result of the exercise of their sound judgment—the outcome of frequent consultations." This finding was approved by the court in banc. We therefore accept that finding which requires the dismissal of the assignments raising the second complaint.

3. The third complaint is that the fund was awarded to the executor of Lillian H. Curran, deceased, instead of to appellant. This complaint is based on the proposition that an appointee takes immediately from the donor. The widow made no direct appointment. Her will was dated November 21, 1927. She first directed the payment of her debts and funeral expenses; then, made numerous bequests to individuals and to charities; and next, provided that "All bequests......are to be paid free and clear of all taxes whatsoever." The residue she gave to two persons, one of them, appellant. In its opinion dismissing exceptions to the adjudication, the learned court below said—"The auditing judge awarded the fund to the executor under the will of the donee and directed it be kept segregated from her individual estate so that at the audit thereof it can be determined whether the appointed estate is subject to her debts, legacies and estate and inheritance taxes. This is our usual practice. Creditors are not now before us and they have a right to be heard on these questions."

That disposition was correct. See section 302 (f) Revenue Act of 1926, 44 Stat. 71, 26 USCA, section 1094; Porter, Exr., v. Commissioner of Internal Revenue, 288

U. S. 436, 441; Blackburne v. Brown, 43 F. (2d) 320; Stratton v. U. S., 50 F. (2d) 48.

Decree affirmed at appellant's costs.