Snyder Estate.

Argued January 25, 1943. Before MAXEY, C. J.; DREW, LINN, PATTERSON, PARKER and STEARNE, JJ.

reargument refused April 13, 1943.

*William S. Fenerty,* for appellant.

*Richard Hay Woolsey,* with him *Harry J. Alker, Jr., MacCoy, Brittain, Evans & Lewis,* and *James S. Clifford, Jr.,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 22, 1943:

This appeal raises questions concerning the propriety of investments and expenditures by the corporate guardian of a weak-minded person.

On July 10, 1920, The Commonwealth Title Insurance and Trust Company was appointed guardian of the Estate of Millard P. Snyder, a weak-minded person, now confined in the United States Veterans' Hospital, at Coatesville, Pennsylvania. An inventory was filed in 1926. Provident Trust Company of Philadelphia succeeded by merger to the guardianship, and, on May 19, 1942, filed its First Account. The court below appointed an examiner and listed the account for audit.

The account shows that the estate increased from $1,515 in 1920 to $41,017.55 in 1941. During this period the guardian received $11,861 from the Federal Government as disability compensation to the incompetent, and

$14,490 in benefits from war risk insurance. These funds with the incompetent's final army pay of $90, and a refund of $75.90 in war risk insurance premiums were invested in Treasury and private bonds and in first mortgages, and the accumulations were reinvested. Some of the mortgages have been foreclosed and the real estate is held by the guardian, pending liquidation.

Exceptions to the account were filed by counsel for appellant on behalf of two brothers and a sister of the incompetent as next-of-kin, seeking to surcharge the accountant for two mortgage investments and for $2,001.36 paid to the United States Veterans' Bureau to provide spending money to the incompetent at rates varying from $10 to $20 per month. Objection was also made to a credit of $2,469.24 for commissions to the accountant. The sister and one brother of the incompetent having indicated that they were unwilling to join in the exceptions, supplemental exceptions were filed by appellant alone, asking, in addition to the foregoing items, that the accountant be surcharged for small Christmas gifts to the incompetent totalling $125, and charging generally mismanagement of the estate.

At the audit, testimony was received sur the exceptions, and a "final judgment" was entered by the auditing judge confirming the account. No exception to this order was filed. Appellant's petitions to strike the examiner's report from the record for irregularities, and for the amendment of the record to include certain colloquy of court and counsel alleged to have been omitted, and requests for exceptions and rulings which counsel had neglected to make at trial to certain evidence, were dismissed. Appellant excepted and appealed to this Court from the orders dismissing his petitions and from the "final judgment". An opinion sustaining the action of the auditing judge was filed by the court below en banc.

As appellant has not included in the statement of questions involved and assignments of error his objection to the manner in which this case was disposed of

by the court en banc, this court cannot consider it on appeal: *Pramuk's Appeal*, 250 Pa. 45; *Commonwealth to use v. Crow et al.*, 294 Pa. 286. Many irregularities of procedure, on the part both of appellant and of the court below, appear in the record. The auditing judge should not have designated his adjudication of the account as a "final judgment", but as appellant filed no exception to it, he cannot complain that the court en banc did not hear him. Although the court entered no final decree, this court will construe the opinion of the court en banc to be an adoption of the "final judgment" of the auditing judge as its final decree.

There is no need to consider at length appellant's argument regarding irregularities in the reception of the examiner's report. The fact that the auditing judge ambiguously designated him as an "examiner or auditor" and "approved" his report cannot obscure the fact that his function was solely that of an examiner, and adviser to the court, and not an auditor, empowered to hear and make recommendations on claims. Appellant is therefore mistaken in assuming that the rules of the court below applicable to auditors were violated.

The court below has already passed upon, and rejected, appellant's contention that important omissions exist in the transcript of the case. The auditing judge properly refused to permit appellant to read into the record the World War Veterans' Act of 1924 and its amendments. These laws are matters of which our courts will take judicial notice. See *Di Donato v. Phila. & R. Ry. Co.*, 266 Pa. 412, 416; *Hendricks v. Pyramid M. F. Corp. et al.*, 328 Pa. 570, 575. As to appellant's contention that he was thereby deprived of the right to raise a federal question concerning the violation of these statutes, it is sufficient to say that the record clearly indicates that the question was raised below in appellant's requests for conclusions of law and disposed of in the opinion of the court en banc.

There is no merit in the contention, and it comes with peculiarly bad grace from appellant, to object that the

incompetent's funds were used to provide him with clothing and small comforts. The accountant paid out these sums to the hospital authorities at their request, and with the approval of the Veterans' Administration and the office of the Solicitor General. The Act of July 2, 1926, ch. 723, Section 9, 44 Stat. 794, amending the Act of June 7, 1924, ch. 320, Section 202, 38 U. S. C. A., Section 484, provides that where a hospitalized veteran "is financially unable to supply himself with clothing, he shall also be furnished with such clothing as the Administrator of Veterans' Affairs may deem necessary. . . ." It is further provided that a veteran's pension shall not be subject to deduction for "board, maintenance or any other purpose incident to hospitalization" while he is in a government hospital. Here the incompetent is possessed of a considerable estate and is well able to pay for these few items of clothing and small incidentals. There is no evidence that any part of the incompetent's pension was used for his board or maintenance at the hospital, which fact alone distinguishes this case from *Reynolds v. United States,* 292 U. S. 443, or that it was used to purchase anything which the hospital or Veterans' Bureau was obliged by law to supply. The federal officers charged with the care of the incompetent and with the administration of the Veterans' Act and its amendments have supervised and approved all of these expenditures.

Appellant has objected to two mortgage investments made by the accountant. The first of these was for $1,600 secured upon premises 2318 N. Mutter Street, Philadelphia; the second, for $1,400 secured upon premises 2811 W. Gordon Street, Philadelphia. The evidence shows that these properties were appraised at values far in excess of the mortgages at the time that the mortgages were acquired by accountant. Appellant contends that the accountant committed a breach of trust by transferring these mortgages to the guardian's estate. The testimony shows, however, that the mortgages were originally acquired by the bank, and held but for a short

period, solely for the purpose of trust investment, and the transactions are therefore within the rule of *Greenawalt's Estate*, 343 Pa. 413, and *Saeger Estates*, 340 Pa. 73, rather than that of *Tracy et al., Co-Trustees, v. Central Tr. Co.*, 327 Pa. 77. The fact that the appraisals were made by an employee of the corporate fiduciary does not affect their value in the absence of any showing of fraud or bad faith. *Saeger Estates*, supra.

Appellant also contends that the accountant in both instances violated the Act of June 13, 1836, P. L. 589, Section 34, 50 PS, Section 755, which provides:

"It shall be lawful for any committee as aforesaid, by the leave, and under the direction of the court of common pleas having jurisdiction, as aforesaid, to invest the money of a lunatic or habitual drunkard, in such stocks, or upon such security, as shall be approved of by such court, and if such investment be made bona fide, the committee making the same shall not be liable for any loss that may arise thereby."

Appellant construes this act to make it mandatory in the case of *any* investment by the guardian of a weakminded person that the approval of the court shall first be obtained. *Commonwealth ex rel. v. McConnell*, 226 Pa. 244, is cited. In that case, however, as a careful reading shows, the fiduciary was surcharged for investing without prior approval in bonds of a private corporation which becomes valueless. The discussion makes it plain that these bonds were considered as *non-legal investments*, and it was pointed out that a fiduciary makes such investments at his own risk where he fails to obtain the protection afforded by the Act of 1836 against individual liability by applying to the court for approval. It was said, page 248, "If, therefore, the committee disregards the act of assembly and invests the trust funds *in other than statutory securities* and without the consent of the court, he does so at his own and not at the lunatic's peril." Referring to the surcharge imposed, it was said, page 248, "While this may be a hardship upon the committee, he could have relieved himself

from all liability for the investment of the funds of the cestui que trust by applying to the common pleas for an order of court. The legislature has made provision for the protection of the committee of a lunatic in the investment of trust funds, and the committee should avail himself of the statute."

It is manifest, therefore, that the act did not require, mandatorily, that the court must approve all investments. It did not even require that the court approve non-legal investments. It merely provided, as interpreted in the *McConnell* case, a means whereby the fiduciary could make *non-legal investments* without danger of individual liability. See also *Gibson's Estate,* 312 Pa. 359; *Henry's Estate,* 341 Pa. 439. This interpretation was reiterated by this Court in *Curran's Estate,* 312 Pa. 416, 423, where it was pointed out that the Court in *McConnell's Estate* had overlooked the fact that the bonds in question were secured upon real estate, and were not, therefore, non-legal investments. *Riebel's Estate,* 321 Pa. 145, referring to the *McConnell* case, also makes it clear that the former decision was intended to relate to non-legal investments. If any doubt whatever remains upon the construction of the Act of 1836 it should be resolved now, and definitely, by our holding that it does not require prior approval of the court of *legal or statutory trust investments* by guardians of weak-minded persons. Here the accountant invested in first mortgages of real estate which have always been recognized as legal trust investments. *Curran's Estate,* supra.

As there was no technical breach of trust, the burden was upon appellant to show that the accountant acted negligently or imprudently in making these investments, and the findings and conclusions of the court below negativing the implication of such conduct are conclusive upon this court. *Quinn's Estate,* 342 Pa. 509, 514; *Frank's Estate,* 339 Pa. 499, 501. See also *Bard's Estate,* 339 Pa. 433, 437; *Clabby's Estate,* 338 Pa. 305, 309-310.

The charge of appellant that certain expenditures for repairs to the Gordon Street property were not made was

disproved by the testimony of accountant's witness, and by the statement of the counsel for the Veterans' Administration that he had investigated the same charge and found it baseless. The only evidence offered in support of the exception to this item was appellant's own testimony that he had visited the property *two years after the work was done* and found no evidence of repair, and that he had conversed with an unnamed neighbor who said that no repairs had been made for five years. The neighbor was not called to testify. Clearly the court below was correct in allowing this credit.

Accountant did not file its first account until the expiration of 22 years. It gave no notice to appellant of its intention to apply for leave to sell certain foreclosed real estate. It does not appear, however, that any loss to the estate has resulted thereby. On the whole the estate of the incompetent has been prudently and successfully administered. Despite the financial depression the total amounts received by the incompetent from the federal government, $28,032.23, have been increased by investments to a net estate of $41,017.55, of which $3,039.56 has been distributed. The Veterans' Administration has approved the management of the estate by the guardian, and two of the three next-of-kin of the incompetent have expressed their complete satisfaction. This, in itself, is significant of the guardian's successful administration of the fund entrusted to its care. *Clabby's Estate,* 338 Pa. 305, 310.

The final objection relates to the credit taken by the accountant for commissions at 5% on $49,384.74. It does not clearly appear why the claim for commission is based upon this amount when the debits total $51,-350.32. It is well established that except in unusual circumstances commission on *corpus* is not allowed until the trust has terminated or the particular trustee's relation to it has ended: *Bosler's Estate,* 161 Pa. 457; *Mylin's Estate,* 32 Pa. Super. Ct. 504. The rule is sound. Before the termination of a trust, the trustee may die, resign, or be removed, and the appointment of a substi-

tuted trustee may become necessary. When such situations arise, it has always been the practice that in the sound discretion of the court, commissions or compensations are equitably adjusted between such fiduciaries. To pay the entire commission on *principal* in advance might result in the payment of a double commission. In the event, however, of *extraordinary* services an immediate compensation may be allowed: *Penn-Gaskell's Estate (No. 1)*, 208 Pa. 342; *Thouron's Estate*, 182 Pa. 126.

Upon the record before us it does not appear that the adjusted or withheld compensation of the disabled veteran, and the proceeds from his War Risk Insurance Policy, are in any sense *income* to this estate. This was payment for services theretofore rendered in the one instance, and benefits of insurance in the other. The fact that payments by the government were made periodically, instead of in a lump sum, is immaterial. Until the termination of the trust, or the withdrawal therefrom by the fiduciary, all that it is entitled to receive by way of compensation is a commission on *income*, in the absence of extraordinary circumstances. The court below must determine, under the facts of this particular case, what is principal and what is income, and allow compensation as above indicated, taking into consideration the existence of any unusual circumstances justifying an immediate allowance of a commission on principal. We are unable to approve the credit for commissions as shown by the account.

The decree of the court below, as modified, is affirmed, and the record is remanded for further proceedings consistent with this opinion. Half the costs of this appeal are to be paid out of the estate, and half by the appellant.