## Sharp's Estate

*W. Richardson Blair*, of *Ballard, Spahr, Andrews & Ingersoll*, and *Benjamin Ludlow*, for exceptants.

*John J. Gallagher, Catherine A. Donahue, Ralph C. Busser, Jr.*, and *John R. K. Scott*, contra.

Van Dusen, P. J., November 19, 1943.—The will in this case gave a power of appointment by will to Allison Sharp. He exercised the power in a separate part of his will, and he gave his own estate in another part of his will to other beneficiaries. He expressly denied an intention to blend the two estates. The auditing judge awarded the appointed estate directly to the appointees. A Pennsylvania creditor of Allison Sharp excepts to this award, claiming that the award should have been to the ancillary executor of Allison Sharp, in order that creditors might present their claims against the fund in the hands of the ancillary executor. Allison Sharp died a resident of New Jersey.

It is quite true that this court has followed the general practice of awarding an appointed fund to the executor of the appointor, by whom it is accounted for separately together with the appointor's own estate. The purpose is to permit creditors and legatees to present possible claims against the fund and to adjust liability for taxes between the two funds: Curran's Estate, 312 Pa. 416; Fisher's Estate, 16 Dist. R. 151; Brown's Estate, 17 Dist. R. 569; Sparks' Estate, 30 Dist. R. 815; Mitchell's Estate, 7 D. & C. 387; Shoch's Estate, 41 D. & C. 698. This procedure is not unalterable; it is only a means to an end; and the expense, delay, and circumlocution which it entails may be dispensed with when it is clear that there is no color of any claim against the fund by anyone except the appointees. In Harris' Estate, 34 D. & C. 378, for example, as auditing judge I awarded directly to the appointee when the appointee was legatee of the whole appointed estate and the whole individual estate, so that no question arose between the two funds. Further, in that case the exercise of the power was expressly made in the residuary clause, so that there was no possible liability for the appointor's debts. More recently, in Estate of John Dobson, July term, 1912, no. 378, ad-

judication of May 25, 1943, I awarded directly to appointees in a case in which the appointor's will expressly exercised the power by a separate part of her will and to different beneficiaries, as does this will, and it did not appear that legatees and creditors could have any possible claim. Liability of the fund to contribute to Federal estate tax was taken care of by retaining an estimated fund in the hands of the trustees of the appointed estate, as has been done in the present case. The executors of the appointor's will concurred in this action. That case was a particularly striking instance of the burden of routing the whole estate through the executors of the appointor to no useful end; for it consisted of at least a thousand items, including registered stocks and bonds, mortgages in Pennsylvania and New Jersey, foreclosed real estate in Pennsylvania and New Jersey, and investments of personal estate in real estate and in improvements to real estate in Pennsylvania and Texas.

We cannot see what possible color of claim creditors can have in the present case.

Certain facts were placed before the auditing judge in the form of what was in substance an offer of proof, and the material part thereof is quoted in the adjudication. These facts were that Allison Sharp tried to make an inadequate settlement with the exceptant, and that during the negotiations he made a false statement of fact; that he fraudulently concealed his own property from his creditors; and that exceptant recovered the property so concealed. It was argued from these facts that the power was so exercised by Allison Sharp as to "defraud" his creditors. It is not clear to us whether the argument based on these facts is (*a*) that because of the fraud the power was so exercised that the whole fund became available to creditors, or (*b*) that the exercise of the power was void, and therefore

the fund passed as in default of appointment. Probably these are alternative contentions.

(We note that by a codicil to his will the donor of the power revoked that part of the will which provided for failure to exercise the power, and that in default of such exercise the fund goes under the intestate law to the next of kin of the donor, of whom Allison Sharp was one. The auditing judge in stating the case overlooked this codicil. We also note that the record contains no copy of Allison Sharp's will. It is furnished to us in the paper books, however, and we have considered it as above.)

The auditing judge stated that he could not conceive how the appointment made could be in fraud of the creditors of Allison Sharp, and we agree with him. A power of appointment is a personal right with which creditors of the donee cannot interfere.

The creditor exceptant in his brief before us states other facts which he wishes an opportunity to prove; and he says that he was misled by our general practice into thinking that an award to the executor of the appointor would be made as a matter of course, and that he would have an opportunity to develop his case more fully at the audit of the executor's account. Counsel, therefore, asks if we will not make such an award on the record before us, that the account be recommitted to the auditing judge, so that the case may be more fully developed. The additional facts stated in the brief, however, are inconsequential, viz, that though by his will Allison Sharp directed the payment of his debts he had not enough personal estate to pay them, and he knew it; that he made his will shortly after doing all the things already adverted to; that his Wicaco stock, which he gave to his brother by his will, was pledged for the debt to the exceptant creditor; that the value of the collateral was less than the amount of the debt; and that he died insolvent.

The widow of Allison Sharp has also filed exceptions. She offered no proof at the audit, and did not even explain what her claim was; and her counsel also says that he relied on the general practice, and he also asks for a recommittal.

We cannot see how there can be any fraud upon the creditors when there is no duty to make an appointment in favor of anybody. The facts alleged may reflect on Allison Sharp, but they do not exercise the power in favor of creditors nor deprive him of the right to exercise it as he saw fit. The power is to be exercised by will, and not by circumstances. Bad conduct and evil intent will not exercise the power, and neither will they forfeit the power.

We have considered all the exceptions, although we do not notice them in detail. It is true that there is no gift over, but this is immaterial as the power was exercised. The suggestion that there was a merger of the title of Allison Sharp as cotrustee and his title as life tenant is not sufficiently developed to enable us to follow it. See Fox's Estate, 264 Pa. 478, and Hance's Estate, 69 Pa. Superior Ct. 432. Also it is immaterial whether the principal was protected by the spendthrift trust or not.

There is nothing in the record as it is now presented which would justify us in sustaining the exceptions. We hesitate, however, to foreclose the exceptants from a full presentation of their claims, which it appears they have not fully developed by reason of misapprehension of counsel. The easy informality of our practice works so well because we are liberal in giving further opportunity in such cases.

We are disposed to recommit the adjudication to the auditing judge, with his consent, in order that the record may be made complete, by proofs or offers of proof, of whatever both exceptants may desire in support of their contentions that there is a disputable matter here.

The exceptions are sustained pro forma and the adjudication is recommitted to the auditing judge.