## Pauer Estate.

Argued Dec. 1, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Edgar A. Barnett,* for appellant.

*Richard Hay Woolsey,* with him *Harry J. Alker, Jr.,* and *MacCoy, Brittain, Evans & Lewis,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 19, 1945:

This appeal raises the question of whether a guardian of a mental incompetent appointed by the court of common pleas under the Act of May 28, 1907, P. L. 292, 50 PS section 941, as amended, may be surcharged for investment of the funds of its ward in omnibus participating mortgages where the said investments were made in good faith and with due diligence, there being no evidence of loss to the estate, merely because the said investments were made without antecedent approval of the court having jurisdiction over the guardian and ward.

On September 21, 1921, the ward, Joseph Pauer, was adjudged mentally incompetent in the court of common pleas and the Commonwealth Title Insurance and Trust

Company was appointed statutory guardian under the Act of 1907, supra. The present appellee is guardian as successor by merger to the guardian originally appointed.

In 1926, 1927, 1929, 1930 and 1931, the guardian invested funds of the ward totalling $6700 in omnibus mortgage participations without previously obtaining approval of such investments by the court of common pleas. The relevant facts are stipulated. It is agreed by the parties that all of these investments were made in good faith with common skill and prudence, and with due care under all of the circumstances. It is stipulated further that all of these investments were secured upon approved real estate and that the mortgages in which the estate participated were first liens on such real estate in an amount not exceeding two-thirds of the fair value thereof. The stipulation recites that the premises were free of delinquent taxes and that at the time of assigning participations to this estate there was no default on any of the mortgages which were created by individual owners and not by corporations. Furthermore, written appraisals were obtained prior to the creation of the mortgages and immediately prior to the assignment of participating interests therein to the guardian. In each case the entire bond and mortgage was taken in the name of the Provident Trust Company, Trustee for Various Trusts, for investment of fiduciary funds, and the fractional interests were assigned by the company to itself as guardian with appropriate record of the names of the participants and the amounts of their respective participations.

On September 6, 1940, the Orphans' Court of Philadelphia County entered a final decree establishing the legal presumption of the death of the ward as of February 13, 1931, and authorized the issuance of letters of administration upon his estate. On October 2, 1940, such letters were issued to Mary Istvanik, the appellant. The guardian's first and final account was filed on November 19, 1940, and exceptions were filed by the ad-

ministratrix. All of these exceptions except those relating to the above investments have been disposed of. As to the remaining exceptions, administratrix contends that the investments referred to were illegal, that they constitute a nullity, and that the guardian should replace the said investments with cash. The auditing judge dismissed the exceptions and his adjudication was sustained by the court in banc. This appeal resulted.

The administratrix first contends that the guardian of a mental incompetent appointed under the Act of 1907 has no power to make *any investment* without the prior consent of the appointing court. This contention is based upon the administratrix's interpretation of Section 34 of the Act of June 13, 1836, P. L. 589, 50 PS section 755, which refers to investments by the committees of lunatics, the Act of 1907 having provided that the powers of guardians of mental incompetents should be precisely the same as those of such committees. Section 34 of the Act of 1836 provides: "It shall be lawful for any committee as aforesaid, by the leave, and under the direction of the court of common pleas having jurisdiction, as aforesaid, to invest the money of a lunatic or habitual drunkard, in such stocks, or upon such security, as shall be approved of by such court, and if such investment be made bona fide, the committee making the same shall not be liable for any loss that may arise thereby."

This Court had occasion in *Snyder Estate,* 346 Pa. 615, 31 A. 2d 132, to pass upon a similar contention, and it was held that the section quoted was in its terms permissive rather than mandatory. It was stated (page 621) : "If any doubt whatever remains upon the construction of the Act of 1836 it should be resolved now, and definitely, by our holding that it does not require prior approval of the court of *legal or statutory trust investments* by guardians of weak-minded persons."

The administratrix contends that the court misconstrued the Act. An examination of previously decided cases, however, indicates that the construction adopted

in the quoted passage is the construction following logically the view announced by this Court in the *McConnell* case (*Commonwealth v. McConnell,* 226 Pa. 244, 75 A. 367). In that case Justice MESTREZAT, construing the Act of 1836, said with respect to investments by the committee of a lunatic: "If, therefore, the committee disregards the act of assembly and invests the trust funds in other than statutory securities and without the consent of the court, he does so at his own and not at the lunatic's peril." The clear implication from this statement is that the Act *is* permissive insofar as *legal* securities are concerned, otherwise, the court would not have pointed out a distinction. The *McConnell* case has been so construed by the lower courts of this Commonwealth: see *Blacho's Estate,* 33 D. & C. 88, 92; *Estate of Mary J. Phillips,* C. P. No. 2, March Term, 1915, No. 4549 (not reported). In *Curran's Estate,* 312 Pa. 416, 167 A. 597, Mr. Justice LINN reviewed the holding in the *McConnell* case and pointed out that the court had there apparently overlooked the fact that the bonds there involved were first mortgage bonds and hence "legal" investments.

It, therefore, appears that the law is firmly established by *Snyder Estate,* supra, regarding the right of guardians of incompetents to make investments in legal or statutory securities without antecedent approval by the court. There remains, therefore, only the question of whether the investments in the present case were "legal" investments. The administratrix suggests that since the Fiduciaries Act of 1917 and other statutes validating mortgages as legal investments for trust purposes have no direct application to guardians of incompetents, there was no such thing as a "legal" investment for such fiduciaries prior to the adoption of the Act of July 2, 1935, P. L. 540, 20 PS (Supp.) sections 814-815, which amends the Fiduciaries Act by expressly including such guardians and committees among fiduciaries governed by that Act.

On the contrary, it appears that the common law recognized certain "legal" investments for fiduciaries

prior to the adoption of any expositive statutes. In *Hemphill's Appeal*, 18 Pa. 303, Chief Justice BLACK stated that the common law sanctioned investments by fiduciaries in real property and government obligations, expressly referring, inter alia, to the interests and rights of "insane persons". This case was decided after the adoption of the Act of 1836, supra. In *Curran's Estate*, supra, this Court recognized that first mortgages of real estate were "real securities" and had been so regarded for more than a century. Any inference to the contrary in the *McConnell* case was expressly overruled (page 423). In the latter case the Court tacitly recognized that there were "legal" investments for such guardians and committees by drawing its distinction between legal and non-legal investments.

In the *Snyder* case, this Court held that investments in mortgages were legal investments for guardians of incompetent persons requiring no approval by the court. Some of the investments involved in that case were participations in trust mortgages. No distinction was drawn between these participations and other mortgage investments by counsel in that case, and this Court did not expressly pass upon the question of whether such participating interests were legal investments.

The administratrix takes the position that investments in mortgage participations were not legal investments for any fiduciary until so declared by the Act of April 6, 1925, P. L. 152, (repealed by Section 1602 of the Banking Code of May 15, 1933, P. L. 624, 7 PS section 819). The Act of 1925 authorized trust companies to assign to various trust estates participations in a general fund of mortgages upon real estate by the making of certain bookkeeping records identifying the respective participating interests as trust investments. All of the mortgage participation investments here involved were made in the manner provided by the Act of 1925 and were made subsequent to its passage. The administratrix, however, contends that the Act of 1925 applied only

to "trust funds" and "trust estates" as distinguished from the estates of mental incompetents and lunatics.

Prior to the Act of 1925, it constituted a violation of duty if a corporate trustee held legal title in its corporate capacity to the mortgages in which various of its trust estates participated. Section 41(a)1 of the Fiduciaries Act of 1917, as amended by the Act of April 26, 1929, P. L. 817, 20 PS section 801, authorized investments by fiduciaries in first mortgages or in participating mortgage bonds secured by unencumbered real estate conveyed to a corporation *in trust* for all such bond holders. The mortgage pool investments authorized by the Act of 1925 had been common trust investments throughout the Commonwealth for a long period of time prior to the adoption of that statute. See *Guthrie's Estate,* 320 Pa. 530, 182 A. 248; *Dillon's Estate,* 324 Pa. 252, 188 A. 134; *Rambo's Estate,* 327 Pa. 258, 193 A. 1. In *Harton's Estate,* 331 Pa. 507, 517, 1 A. 2d 292, Mr. Justice MAXEY, now Chief Justice, stated (page 517): "The Act of 1925 modified the established rule, sanctioned for decades by statute as well as judicial decision, that a trust company must so designate its trust investments as to indicate clearly to which trust each investment belongs; it provided that the fiduciary relationship might appear solely upon the books and records of the trustee, where participating interests in a general trust fund of mortgages on real estate are allotted to various estates." On page 519, he said: "It must be conceded, therefore, that investments of the types here complained of had no *statutory* authorization in this state prior to the Act of 1925, supra. . . . In the absence of enabling legislation the authorities are conflicting as to whether such investments as those now before us are tainted with a *fundamental illegality* in their making, apart from the question of the trustee's liability if loss results." The opinion points out that even if such investments had constituted a technical breach of trust because they failed to follow the form prescribed in the enabling statutes, the trustee could be surcharged only

for losses *directly resulting* from this breach. See Restatement, Trusts, sections 204-205. In that case, as in the present case, no evidence was presented to show that the mortgages in which the trust estates participated were not proper investments *per se* and Justice MAXEY said (page 521) : "As stated in *Guthrie's Estate,* supra (page 538), 'a court of equity may in its discretion refrain from inflicting penalties which it considers unjust under the circumstances.' " See *Gibson's Estate,* 312 Pa. 359, 167 A. 282.

In the present case, the administratrix would have the Court surcharge the guardian for investing the funds of the ward in mortgage participations which were at the time recognized as legal investments for trust funds of other fiduciaries and which had been selected with due care and skill under the circumstances. She admits that the investments were made in good faith, that the mortgages themselves were first liens upon the lands encumbered, and that the amount of each mortgage did not exceed two-thirds of the fair value of the land. No loss is shown to have resulted to the ward by reason of the investments. It would clearly be inequitable and contrary to the practice of our courts to impose upon the fiduciary in this case a surcharge merely because it failed to proceed under the Act of 1836, which does not purport to *penalize* fiduciaries who fail to obtain antecedent court approval for investments but merely provides that investments in non-legal securities shall be at the *risk* of the fiduciary. The equitable principles asserted by this Court in *Gibson's Estate, Guthrie's Estate* and *Harton's Estate,* all supra, are applicable to the case at bar, and are authority for the action of the court below in rejecting the surcharge.

It should be pointed out that we are not here confronted with a situation such as those presented in *Iscovitz's Estate,* 319 Pa. 277, 179 A. 548, or *Klennert's Estate,* 37 D. & C. 568, in each of which cases the fiduciary had invested funds of the estate in trust certificates which represented merely a receipt from a trust com-

pany for funds of the estate and an executory agreement by the trust company to invest such funds in first mortgage participation. In both cases it was pointed out that the trustee had thereby failed to perform his duty with regard to the trust by relinquishing to the trust company all of his fiduciary discretion with regard to the investment of the funds. The contract between the trust company and the fiduciary gave the fiduciary no control whatsoever over the investment and did not require that the funds should at all times be invested by the trust company in first mortgages. In the present case, the mortgages were carefully selected by the guardian as trust mortgages, held by it in its fiduciary capacity, the funds of the ward were invested in identified mortgage participations and the books and records of the company showed the investment and the interest of the ward's estate in the trust mortgages. There was here no surrender or improper delegation of the guardian's duties with regard to investments.

In view of this conclusion, it is unnecessary to consider whether the investments in the present case were "statutory" investments at the time they were made.

The decree of the court below is affirmed at the cost of the appellant.