## Williamson Estate

Before Sinkler, P. J., Klein, Bolger, Ladner, Hunter and Boland, JJ.

*John R. McConnell* and *Thomas B. K. Ringe,* for exceptants.

*W. Albert Sanders,* contra.

*Maurice Heckscher* and *Morris Duane,* amicus curiae.

HUNTER, J., March 24, 1950.—As stated by the auditing judge, these proceedings are "in the nature of a test case, in an endeavor to change the long established rule in Pennsylvania which prohibits a trustee from charging commissions against principal, in the absence of the performance of extraordinary services, until the termination of the trust or the termination of the trustee's connection with the estate".

The trustee as coexecutor, following the death of decedent in 1930, received commissions of one and one-half percent on an estate of $198,714. A commission of five percent on income has been paid during the administration of the trust.

The trust existed 17 years to the date of audit, and still continues. The services of the trustee have been numerous and detailed, but it is conceded that no extraordinary services have been performed.

The trustee, a trust company, contends that the compensation which it received was not only inadequate but actually represented an out-of-pocket loss.

Evidence in great detail was presented outlining the services rendered in this particular trust and in trust administration generally, demonstrating that the cost of operating a trust department has greatly increased since the early days when rules fixing rates of compensation for fiduciaries were established. The auditing judge has carefully analyzed the testimony and his adjudication is a complete and satisfactory recital of all important facts.

The trustee requested for past services an immediate compensation of $3,000 out of the principal of the trust. The auditing judge found that the sum requested was fair and entirely reasonable, and would no more than return to the trustee a fair compensation for services already rendered to this estate, and would in no sense be an overpayment or result in hardship to the estate, even if the trustee resigned tomorrow or the trust terminated in the near future.

The auditing judge concluded, however, that he was without authority to make this allowance because of the long established rule that except in unusual circumstances commissions on corpus are not payable until the trust expires or the trustee's relation to it ends: Mintzer's Estate, 18 Phila. 97, 43 L. I. 292, affirmed 9 Atl. 65 (1887) ; Bosler's Estate, 161 Pa. 457 (1894) ; Snyder Estate, 346 Pa. 615 (1943) : See also Kennedy Trust, 364 Pa. 310.

The reasons for the repeal of this rule are convincingly stated by the auditing judge. He said:

"While it is true that allowance of interim compensation might occasionally result in overpayment of commissions, if the charge is carefully scrutinized by the courts, payments of excessive amounts can be avoided. It is manifestly unfair to compel a fiduciary to await the termination of a trust, which may last for many decades, before he is paid. This is particularly unjust in the case of an individual trustee. Since

trustees are usually selected for their wisdom and experience, in most cases the choice in the case of an individual is a person of mature age, who, in the normal course of events, might be expected to predecease some of the beneficiaries. In such case the trustee must die in order to be paid. Furthermore, because of the exceedingly high income and estate tax rates, receipt by individual fiduciaries of compensation in a lump sum for services rendered over a long period of time often results in disproportionate taxation, greatly reducing the fruits of the individual's labor."

The judges of this court are of the opinion that the rule forbidding interim compensation should be abrogated, but agree with the auditing judge that until it has been overruled by the Supreme Court itself, or the law changed by the legislature, it is the law of this Commonwealth, and must be respected and followed.

Furthermore, it is our opinion that the standards of commissions payable to a trustee for the management of a trust should be revised in favor of increased compensation, which opinion is based not only on the facts of this case but upon our experience with trust estates generally. As was said by the auditing judge: "Today, the administration of trusts is a business, and, like all businesses, in order to continue, it must operate at a profit."

Life tenants, the primary objects of testator's bounty, should not be taxed with the burden of this increase, especially in times of diminished returns on trust investments. Resort must be had to the principal of the trust.

If the prohibition against an immediate allowance out of principal were removed, the allowance could take the form of a lump sum for past services as here claimed by the trustee, or consideration could be given to the suggestion of the trustee that for the performance of its duties in the future an annual allowance

be made, for example, a percentage based on the annual value of principal, part to be paid from principal and part from income. The allowance of a yearly compensation would put the estate upon a pay-as-you-go basis, compensation would be accurately measured by the length of the trust, and no further payment would be due at its termination.

It may be that the annual allowance suggested by this trustee is too large an increase. Certainly careful study will have to be made if a new standard of commissions is fixed, new rates compared with the old, and no more than a fair and reasonable increase granted.

Compensation, of course, is not a question of percentage, but of compensation for services rendered. Nevertheless, as in the past, for the guidance of trustees and the courts, a standard of commissions for normal services must be measured by a percentage, to be increased or diminished according to the value of services in a particular estate.

Because of the repeal by the Act of April 10, 1945, P. L. 189, of section 45 of the Fiduciaries Act of June 17, 1917, P. L. 447, 20 PS §813, which forbid double commissions where the same person was both executor and trustee, executors' commissions should be restricted to services and responsibility in that capacity, if further commissions are to be allowed to the same person as trustee. That, too, will be a subject for consideration if there is to be a general revision of the compensation of trustees.

Because we have disallowed all present commissions on principal, we agree with the auditing judge that it is not necessary to discuss the question whether the trustee is precluded from receiving additional compensation because it had received a share of executors' commissions prior to the repeal of the Fiduciaries Act of 1917, sec. 45, supra.

The exceptions are dismissed and the adjudication is confirmed absolutely.

## CONCURRING OPINION

LADNER, J., March 24, 1950.—I concur in the result but I do not approve of all of the views expressed in the adjudication and in the opinion. As this is a test case, involving a matter of great importance to fiduciaries, beneficiaries and the public, I deem it best to express my own views which may be of some assistance to the reviewing court.

There is active in Philadelphia a Corporate Fiduciaries' Association composed of practically all of the trust companies doing a fiduciary business in this county. For some years this association has been pressing this court to approve a new basis and an increased scale of compensation to trustees by substituting for the old rates of commission an annual charge of one half of one percent of the trust principal, divided so that one quarter of one percent be paid out of principal and the other one quarter of one percent be deducted from income. We have consistently refused to approve any such change in the method of computing commissions, not only because we have no right to do so in face of the many controlling Supreme Court decisions, but also because we had no means of knowing whether the scale proposed is fair and reasonable. We pointed out to the Corporate Fiduciaries' Association's representatives that apart from their right to establish by appropriate proof the inadequacy of compensation for the services rendered in a given case, they could provide for their scale of compensation by special contracts with testators or settlors before accepting fiduciary appointments, such agreements having always been respected by this court. That this suggested practice has been followed is noticeable not only from the increasing number of cases that come before us for audit

in which compensation has been fixed by contract, but the testimony in the case before us shows that so far as new business is concerned, the accountant here has been entering into such contracts before accepting trust appointments. Moreover it has since 1939 even succeeded in obtaining increased compensation of a majority of its existing trusts by voluntary agreement of the beneficiaries thereof.

But it seems that the corporate fiduciaries in general are desirous of having their scale applied by us to: (1) All pending trusts, whether created before or since the new scale was adopted, and (2) whether or not testator or settlor who created the trust died before the adoption of the new rates.

As to these cases the first step taken by the corporate fiduciaries seems to have been to obtain the repeal of section 45 of the Fiduciaries' Act of 1917, which restricted trustees (who were also executors), to one commission on principal payable at the audit of the executor's account. This was accomplished by the passage of the Act of April 10, 1945, P. L. 189, which simply repeals section 45 of the Fiduciaries' Act of June 7, 1917, P. L. 447.

Neither the adjudication nor the opinion expresses any views on whether this repeal can operate retroactively, nor has our court en banc ever expressed any views thereon (see Snow's Estate, 58 D. & C. 485, Van Dusen, P. J.) but my own view is that it cannot. I would rule that no trustee who once accepted a trust, and receives compensation based upon services rendered as executor and to be rendered as trustee, can now ask additional compensation without a showing of special, or more than ordinary services. I think my view in this regard is fully supported by section 96 of the Statutory Construction Act as well as the other authorities quoted by the learned guardian ad litem in his brief, namely, Sutherland on Statutory Construc-

tion, sec. 2043, vol. I, pp. 526, 527; Crawford on Statutory Construction, sec. 317, p. 646; Keystone State Building & Loan Association v. Butterfield, 74 Pa. Superior Ct. 582.

I entertain no doubt that the increasing complexity of carrying on a fiduciary business, coupled with depreciation of the purchasing power of a dollar, followed by the inescapable increase of wages, has considerably added to the expense of conducting business as compared with the time when the existing basis and rates of commission were established. Neither am I adverse to the suggestion that under present tax laws it would be more equitable to permit charging a portion of the principal commissions each year instead of awaiting the termination of the trust. Certainly the present system of postponing principal compensation until the trust ends, bears down even more heavily on individual trustees, as shown in the amicus curiae's brief, than on the corporate trustee. For when the trust terminates, whether in the lifetime of the individual trustee or not, there must be added to his own income, or his estate's income for the year the trust terminates a large sum, earned over a period of years resulting in a surtax bracket that greatly reduces his compensation.

However, if the basis of compensation is to be changed to an annual charge, I am not at all prepared to say that the scale of charges adopted by the corporate fiduciaries in this county is reasonable or just. One quarter of one percent on principal annually may, or may not, be too high; but I do not think this court is competent to determine what a reasonable charge should be, certainly not without the aid and research of experienced disinterested accountants. Nor do I think the record before the auditing judge, which is, in a sense, ex parte, demonstrates sufficiently the *extent* to which the old scale of commissions results in a loss. Too many unknown factors enter into considera-

tion of the question, e.g., the result of collating and gathering information on trust securities by the trust department is probably equally available to the banking department. And how far the trust department is productive of business for the other departments cannot be effectively demonstrated.

Of even greater importance is the question whether the overhead expenses of the general corporation expense is fairly apportioned. In fact, on this question alone may hang a resultant gain or loss of the personal trust department.

The record of exhibits shows that the accountant's income from its trust business for the year 1946 was $1,893,312.00. As against this, exhibit A-20 shows the expenses charged for conducting the same to be $1,935,027.45—an apparent loss of $64,714.45. However, the expenses as shown are grouped under two headings: Direct expenses of $1,415,849.84, and indirect expenses, $589,504.29. Direct expenses are for the most part readily ascertainable and accurately chargeable to the trust business, though I am bound to note that there has been charged to the trust department occupying only *upper* floors, a rent item of $174,-928.55, based on the same or uniform square foot rate, $3.62, as is charged the banking department, which occupies the *ground floor*.

Of the indirect expenses, totalling $589,504.29, the principal item is $356,124.31, charged for "executive management". This item is explained as follows:

"Executive management is a department to which we charge the salaries of the top executive officers of the company and their secretaries; the rental of the space they occupy, the fees paid to the board of directors, general bank advertising, which cannot be charged to any particular department", etc.

It is clear from a mere recital of the foregoing that charging 29½ percent of the so-called "executive man-

agement" to the trust department may be open to question, for the method of arriving at this apportionment is not convincing. This item alone is sufficient to change the year's deficit of $64,715.00 to a most substantial profit.

Furthermore, some of the other items of the indirect expense group, composed as they are of what is usually termed "overhead" cannot be apportioned with accuracy, and must often be done arbitrarily.

Then, too, it should be observed that there is a yearly average of approximately $14,750,000 of trust funds awaiting investment, etc. The printed record shows that the interest derived from this money is retained by the banking department and not added to the trust department income. It was said that the gross earnings on this sum were 1.75 percent, from which, after deduction of expenses to cover allowance "for income tax losses and charge-offs of loans and investments" netted .88/100 percent, or about 9/10ths of 1 percent for the year. Here again is a considerable item, about $132,000 which, if added to the trust department receipts, would also convert the apparent loss to a substantial gain.

Again, it appears that no portion of earnings of the company's invested capital is allocated to the trust department. The reason given for the failure to include this and the previous interest on uninvested trust funds among the receipts of the trust department, was merely that it is the "accepted practice".

From these observations it is reasonably clear that a satisfactory conclusion could not be arrived at from the record before us as to what increase would be reasonable. This ought to be established, not by a proceeding such as this, but by other means. It seems to the writer, bearing in mind the public interest, that the most effective way of fairly determining the question would be by proceedings before a master appointed

by the Supreme Court upon application to that court, to adopt a rule of court establishing a scale of charges, authority to be given the master to engage disinterested experts, and recommend accordingly. Or, as an alternative, there might be an investigation by an appropriate legislative committee to ascertain the facts on which to establish a fee scale by legislation as was done in other States. In any event, the approach should be State-wide since the questions raised here do not concern Philadelphia alone but are of equal concern to the fiduciaries of the rest of the State.

One observation more: In the early part of the record it was stated, in effect, that the scale of charges urged by the corporate fiduciaries as reasonable was one half of one percent of the principal to be paid annually and apportioned to principal and income, and that such apportionment was usually done by dividing the charge equally between principal and income. Later in the record it was stated that the accountant was in process of adopting a modification of this plan whereby the charges against income would be on a percentage of income. Upon inquiry of counsel the opinion writer was furnished with information that a new standard schedule of charges has since been adopted and is as follows:

> Annual Principal Commissions: On personalty (except mortgages) computed on value as determined each year,
> On first 100,000 3/10ths of 1% ($3 per $1,000),
> On next 400,000, 2/10ths of 1% ($2 per $1,000),
> On next 500,000, 1/10th of 1% ($1 per $1,000),
> On excess of $1,000,000, based on cost and responsibility.
> On mortgages, ½ of 1% on principal,

On real estate . . . to be determined by work done and responsibility assumed, minimum charge $30 per property.

Income Commissions:

In addition to the above, there is also to be charged against the income:

On the first $10,000.00 of the gross income, 5%.

On the next $15,000.00 of the gross income, 4%.

On the next $25,000.00 of gross income, 3%.

On the excess over $50,000.00 of the gross income, 2%.

I am glad to see the abandonment of the attempted practice of charging annually against income one quarter of one percent of principal. I have always been emphatically opposed to that innovation as illogical and unjust to the life tenants who are most frequently the primary objects of a trustor's bounty because such a charge would be payable whether a portion of the corpus was unproductive, invested or uninvested.

Then, too, there might always be a temptation to a trustee to make investments from the standpoint of security alone, regardless of income produced. In this aspect it will be seen that the old plan of charging five percent of the income had the advantage of stimulating the best efforts of the trustee to secure the highest rate of return commensurate with safety, for the higher the return, the greater his commissions. It is also not without significance that in none of the seven States where a new scale of charges has been adopted, whether by rule of court or by act of assembly, has there been any change in the method of computing commissions on income—an eloquent testimonial to the justness of the time-honored method of measuring the compensation for the fiduciary's service to the income beneficiaries.

In setting forth my position I have no desire whatever to reflect upon the industry of the guardian ad

litem. The record shows that he has been diligent, both in his examination of witnesses, in probing into the supporting data and in his preparation of briefs, which have been of much assistance. Nor is there any reflection intended on the care and excellence with which learned counsel for the accountant presented and argued his case, nor ought I refrain from saying a word of commendation of the modern business systems installed by the accountant and the apparent care with which its trust estates are administered.

(Judge Bolger joins in this concurring opinion.)