# Osterling *v.* Commonwealth Trust Company, Appellant.

68

Argued October 7, 1935. Before FRAZER, C. J., KEP-HART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*John M. Freeman,* of *Watson & Freeman,* with him *H. F. Stambaugh,* for appellant.

*Mahlon E. Lewis,* with him *Alter, Wright & Barron,* for appellee.

OPINION BY MR. JUSTICE LINN, November 25, 1935:

Appellant, a trust company, organized and existing under section 29 of the General Incorporation Act of April 19, 1874, P. L. 73, and supplements, appeals from judgment for want of a sufficient affidavit of defense. The action is for breach of a contract with defendant dated June 30, 1926. The agreement recited that plaintiff deposited $71,542.58 with defendant "for the purpose of investing the same . . . in first mortgages on improved real estate" at 6% interest; defendant was to remit to plaintiff the net income "after deducting taxes and commission." If unable to invest at 6%, defendant was authorized to invest "at such rates of interest as may be from time to time prevailing, and if the net return . . . is not satisfactory to [plaintiff], he can, upon notice to the [defendant], withdraw any part or all of the funds deposited by him under this agreement." The parties also agreed that plaintiff might deposit additional sums from time to time for similar investment and that plaintiff might "from time to time withdraw any part or all of said funds. When and as the [plaintiff] desires to withdraw funds from investments under this Agreement, the [defendant] agrees to pay over the amounts requested to him in cash, and itself to assume the mortgages wherein the funds were invested." Each party reserved the right to revoke the agreement in whole or in part "upon giving 30 days' notice of such intention to the other party."

Additional sums were deposited and invested, and, as appears by an exhibit attached to the statement of claim, the total deposited and invested by October 10, 1934, was $101,398. From time to time withdrawals were made,

leaving a balance invested of $66,798.99 on November 22, 1934. On that date plaintiff gave written notice, pursuant to the agreement, of intention to withdraw the balance on deposit, but defendant refused to pay.

A number of matters are alleged in defense. Defendant avers (a) that the money is invested in a "mortgage pool," now depreciated in value below the total amount invested therein, with the result that the market value of an undivided interest, representing the amount of plaintiff's deposit invested in the "pool," is less than the balance of his deposit unwithdrawn, though how much less the affidavit does not state; (b) that, pursuant to an order of the Orphans' Court of Allegheny County, dated July 18, 1933, the pool was "closed," rendering "performance of the contract between the plaintiff and the defendant legally impossible;" (c) that, when plaintiff's notice was received, the condition of the real estate market made it impossible to convert the undivided interest in the "mortgage pool" into cash equal to the amount of the deposit withdrawn; (d) that the contract is ultra vires; (e) that defendant is a member of the Federal Reserve System and that the contract is contrary to regulations of the Federal Reserve Board. An additional contention is made in argument to the effect that defendant is prohibited from complying with its agreement by the Banking Code of 1933. In the affidavit of defense defendant averred that it was willing to deliver to plaintiff a "participation certificate showing his interest in said mortgage pool, and now tenders the same to the plaintiff."

We all agree that the contract provides for and should be given the effect which the parties for many years, under their own construction, gave it; that the defendant (whether as agent or trustee is immaterial on this record) agreed to invest sums deposited by plaintiff "in first mortgages on improved real estate" at 6% or other prevailing rate of interest; that, within the time specified, on withdrawal notice as provided, the defendant

would convert the investment made on plaintiff's behalf and repay the money deposited, or such part as was demanded. We must reject the construction that, at appellant's option (as it now contends), it could discharge its obligation by assigning to plaintiff the investment or delivering to him a participation certificate representing an undivided interest in an investment of a greater sum.

Not only did the contract require the investments to be made on terms that would enable defendant to perform its obligation to plaintiff but it was also implicit in the agreement that defendant should so watch over the investment as to be able to comply with the contract. If it found that mortgage investments could not be made or continued on such terms, it should have exercised its right of revocation and returned to plaintiff the sum received under the contract. If, after making the investment, it neglected to perform its obligations, with consequent depreciation as now averred in defense, it cannot shift the resulting loss to plaintiff. The law does not permit defendant to excuse nonperformance by saying that it made so many agreements like the one in suit, that, if required to perform them all, it would sustain a loss.

We can see no support for appellant's contention that the agreement is ultra vires. The trust company had ample power to receive the money to invest and to agree to repay it.* The basis of defendant's argument, though stated in various forms, appears to be that as it maintained "mortgage pools" in its trust department and that, as it made many similar agreements relating to investments in the "pools," these agreements are ultra vires or against public policy because the ultimate effect

* One of the supplements to section 5 of the Act of 1874, under which defendant was incorporated, the Act of April 6, 1925, P. L. 152, provides ". . . and the company shall have the right at any time to repurchase at market value but not less than face value any such bonds and mortgages from such fund, with the right to substitute therefor other bonds and mortgages."

of such transactions, conducted as defendant conducted them, may be financially injurious to it. The defendant had the power to make the contract. On this subject nothing need be added to what was said in Roberts's Trust Est., 316 Pa. 545, 175 A. 869; see also Kefover v. Potter Title & Trust Co., 320 Pa. 51.

Concerning the averment that the action of the orphans' court made performance impossible, it is sufficient to say that nothing in the affidavit of defense on that subject (only the decree is set forth) constitutes any obstacle to defendant's payment of the sums deposited under the agreement as above construed. The averment incorporating certain regulations of the Federal Reserve Board states no defense; prima facie, so far as appears, violation of either of the rules quoted may or may not forfeit its membership or otherwise subject the defendant to discipline, but, before summary judgment in this action can be prevented by reliance on the rules quoted, something less vague and general in its relation to the subject-matter of the suit must be set forth, in order that we may understand what the defense is: Busby v. Harrisburg Pipe & Pipe Bending Co., 312 Pa. 394, 167 A. 313; O'Malley v. O'Malley, 272 Pa. 528, 116 A. 500.

There is nothing in the Banking Code of 1933 which prevents defendant from paying a judgment for breach of contract, lawful when made, even though, in defendant's view, the making of such contract is now prohibited by the act. If defendant pays the judgment it will be entitled to subrogation to whatever undivided interest in the "pool" plaintiff may be said to have had when defendant refused to comply with its agreement; this result follows from equitable doctrines whose operation the statute was not intended to affect.

Judgment affirmed.