## Clabby's Estate.

Argued January 11, 1940; reargued January 17, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Edward F. Hitchcock,* with him *John Russell, Jr.,* and *Morgan, Lewis & Bockius,* for appellants.

*H. James Sautter,* for appellees.

OPINION BY MR. JUSTICE BARNES, March 25, 1940:

The trust in this case was created under the will of Joseph F. Clabby, who died unmarried on July 21, 1922, possessed of an estate of $821,679.59, invested almost exclusively in nonlegal securities. Under the terms of his will, he bequeathed to a brother, Thomas F. Clabby, one-half of his estate absolutely, naming him as executor and trustee. He gave the residue in trust to divide the net income into four equal parts, and to pay one part to each of his three sisters, Ella J. Cooper, Mary A. Messler and Maggie Ann Butler, and to another brother, William P. Clabby, during the life of each one. He directed that upon the death of any of them, the share of income theretofore paid to the deceased sister or

brother be then paid to his nieces, Agnes Marie McCann, Ethel Messler, and Helen Butler, or their issue, share and share alike. Upon the decease of the sisters and the brother, it was provided that each niece, upon attaining the age of thirty years, receive an equal portion of the corpus of the estate, the issue of a deceased niece to take the parent's share by substitution.

Two of the sisters and the brother, original life tenants, are now deceased. Ella J. Cooper died in 1925; Mary A. Messler in 1929, and William P. Clabby in 1930. Maggie Ann Butler (now Margaret Cauffman) is the surviving sister, and receives one-fourth of the income, while the trust continues during her lifetime.

Agnes Marie McCann, one of the nieces, predeceased the testator, and her share under the will passed to her daughter, Beatrice Montero (now de Lozada). The remaining nieces, Ethel Messler (now Kydd) and Helen Butler (now Emrey), are surviving and both have attained thirty years of age.

The executor's account was filed and audited by the court in 1923. A controversy arose at that time because the executor had not converted a block of 16,670 shares of the Texas and Pacific Railway Company, which constituted the largest single investment of the estate. A surcharge was refused, but the court suggested that the executor "as a fiduciary . . . should rid himself as quickly as possible, of all securities which are not legal investments." The estate also owned 1,000 shares of Philadelphia Rapid Transit Company, and 200 shares of Philadelphia Traction Company.

A restated account was filed on September 4, 1923, by direction of the court, in order that the sales of securities might be shown in detail, and a reappraisement be made of all stocks and bonds owned by the estate. It was then agreed that the corpus should be divided into two funds, one to include the two-thirds remainder interests of Ethel M. Kydd and Helen B. Emrey, the other representing the one-third remainder

interest of Beatrice M. de Lozada. In all accountings the two funds were to be segregated and the securities composing them kept separate and apart.

The executor's schedule of distribution was finally signed by the auditing judge on July 16, 1925, and approved by the parties or their counsel. It shows that the securities of the estate were then almost completely liquidated by the executor, and the proceeds reinvested in legal securities. For the interests of Ethel M. Kydd and Helen B. Emrey there were awarded to the trustee securities of a value of $219,313.45, all in legal investments, excepting only 333⅓ shares of Philadelphia Rapid Transit Company and 66⅔ shares of Philadelphia Traction Company, while to the remainder interest of Beatrice M. de Lozada securities valued at $136,129.39 were allotted, which included 166⅔ shares of Philadelphia Transit Company and 33⅓ shares of Philadelphia Traction Company. These shares of stock in the two funds were the only investments belonging to the testator which the trustee had not converted.

The first account of the trustee was filed in August, 1928. Prior thereto during the years 1925 to 1927 yearly accounts or statements were delivered to all the beneficiaries, showing retention of both transit and traction shares, which paid large dividends during that period. The trustee's first account was approved by all parties in interest, and an adjudication by the court below, dated November 1, 1928, awarded the corpus to be retained by the trustee in the two segregated funds for the purposes of the trust.

In 1931-32 the market value of these two securities, in common with other stocks, declined precipitously, and dividends on the Philadelphia Rapid Transit shares ceased to be paid. The trustee, nevertheless, continued to hold them and no demand was made upon him for their sale by any party having an interest in the trust estate.

On March 15, 1934, the court directed that an examination of the securities comprising the trust be made

by its official examiner. This was done, and a report was filed and approved by the court, showing the ownership of these shares.

The trustee died on November 15, 1937. Thereafter the Fidelity-Philadelphia Trust Company and Wilbur Zimmerman, as administrators pendente lite stated and filed the trustee's second account, for the purpose of an award of the corpus to a substituted trustee. It discloses that the remainder interests of Ethel M. Kydd and Helen B. Emrey still hold 334 shares of the Philadelphia Rapid Transit Company and 67 shares of Philadelphia Traction Company stocks, while the balance of principal is invested in legal securities, consisting of approximately $180,000 of bonds of the City of Philadelphia. The de Lozada interest retains 166 shares of Transit Company and 33 shares of Traction Company, with the balance of principal likewise invested in City of Philadelphia bonds.

Two of the parties, Maggie Ann Cauffman, surviving life tenant, and her daughter, Helen B. Emrey, having a remainder interest, now seek to impose a surcharge upon the estate of the deceased trustee because of the failure to dispose of these two stocks which are held in the fund for Ethel M. Kydd and Helen B. Emrey. The other parties in interest have approved the account, and waived all claims for surcharge.

The court below in its adjudication directed a surcharge based upon the market value of the shares as of March 5, 1929, and ordered that they be replaced with cash out of the estate of Thomas F. Clabby, the deceased trustee. The surcharge, which inured to the benefit of the exceptants in proportion to their respective interests, amounted to the net sum of $12,429.48. Exceptions to the adjudication were filed by Beatrice M. de Lozada, and the executor of Thomas F. Clabby, which were dismissed by the court in banc. These appeals followed.

We are concerned here solely with the question whether the surcharge was proper. On the threshold of the problem the fundamental principle must be borne in

mind that a trustee who has acted in good faith and with common skill and prudence, will not be charged for more than he has received because a loss to the trust has occurred during his administration: *Calhoun's Est.,* 6 Watts 185; *Keller's App.,* 8 Pa. 288; *Wilbur's Est.,* 334 Pa. 45. As we said in *Neff's App.,* 57 Pa. 91, 98: ". . . it is the harshest demand that can be made in equity to compel trustees to make up a deficiency not owing to their wilful default." And see *Bartol's Est.,* 182 Pa. 407.

There is here no suggestion of bad faith on the part of the trustee. On the contrary, under his management the trust estate suffered but slight impairment despite the unprecedented severity of the financial depression which existed during the period of his administration of the estate. The auditing judge recognized this fact when he said: "It is therefore with regret that I enter a surcharge in this case, especially in view of the fact that the condition of this estate as a whole is far better than is usually found in estates of this size in these days." And again he said, "the stock which has been directed to be replaced with cash forms but a small part of this estate and . . . the rest of the assets are gilt-edge bonds of unquestioned security . . ." Moreover, it is significant as attesting the successful management of this estate that only two of the four trust beneficiaries, representing but a one-third remainder interest, are dissatisfied and have attempted to place this charge upon the estate of the deceased fiduciary.

It clearly appears from the record that the present exceptants were familiar with the details of the administration of the estate from its inception. The question is, did they consent to the retention of the shares so that they are estopped from demanding a surcharge. In 1923 they joined in an effort to hold the executor responsible for the failure to sell the shares of the Texas and Pacific Railway Company, but on September 4, 1923, the attorney representing them wrote to counsel for the trustee:

"In reference to the shares . . . of the Philadelphia Rapid Transit and Philadelphia Traction Company, my clients will be satisfied to have you retain them for the present." In 1928 the trustee's first account showed that the shares of stock were included as part of the trust assets, yet no complaint was made by either of the exceptants. On the contrary, they approved the account.

From 1929 to 1937 semi-annual statements were mailed to the exceptants showing the receipt and disbursement of the income of the estate. While these statements were not offered in evidence, their counsel admitted at the audit that there were sent "to Mrs. Emrey —and I am quite sure to Mrs. Cauffman—statements of income received, and, of course, included on those statements were any dividends paid by either of these two stocks. . . ." There were dividends paid on the Philadelphia Rapid Transit shares until 1931 and upon the Philadelphia Traction stock to 1937. In consequence, both Mrs. Cauffman and Mrs. Emrey (the latter became an income beneficiary in 1925) knew that the investments were still in the hands of the trustee, yet no demand was made by them for the sale of these shares. This fact was conceded by counsel for the exceptants at the hearing.[1]

They were satisfied to receive and enjoy the substantial income which the shares yielded and no doubt they, too, had confidence that this was a conservative investment which was safe for the trustee to hold. For fourteen years after provisionally approving the retention of these shares the exceptants indicated no change of intention concerning them. Their contention that they expected the trustee to observe the warning of the auditing judge in 1923 to sell all nonlegal securities, carries little

---

[1] Upon the record it is stated: "I understand, too, that Mr. Sautter [attorney for exceptants] will agree with me that there has been no direct request by the exceptants in this case for the sale of his stock until the account was filed." By Mr. Sautter: "Yes, not until after the trustee died."

weight at this time in view of the letter of September 4, 1923, of their acquiescence in the retention of these shares by their approval of the account filed in 1928, and of their receipt of the dividends with full knowledge of the existing circumstances. It was not until the trustee was dead and unable to vindicate his stewardship, and after the stocks had declined in value and a loss occurred, that any question was raised by them. Moreover, both exceptants were sui juris from the establishment of the trust.

It would be difficult to find a clearer case of acquiescence by beneficiaries in the retention of an investment than is presented by this record, and in our opinion they cannot now be heard to complain. The facts bring the case within the established principle as stated by Mr. Justice Drew in *Macfarlane's Estate,* 317 Pa. 377, 382, that "A competent beneficiary who with full knowledge of the facts and of his rights expressly consents to or affirms an investment by the trustee cannot, in the absence of fraud, thereafter question its propriety. . . . Affirmance of the investment may be implied from failure of the beneficiary to object within a reasonable time, although aware of the facts and continually receiving benefits from the investment."

In Macfarlane's Estate it was attempted to surcharge a trustee on the ground that shares of stock in a new corporation exchanged for those received from the testator were an improper investment of the trust estate and should have been sold within a reasonable time after their acquisition. Substantial dividends were paid on the common stock of the company for seven years, and on the preferred stock for fifteen years without an objection being made by the beneficiary because of their retention, and without demand that they be sold. We held that such conduct amounted to acquiescence and affirmance sufficient to bar the claim for surcharge.

In *Curran's Estate,* 312 Pa. 416, a trustee received from the testator's estate upon his death in 1907, certain

bonds which were a nonlegal investment. The widow of testator, who was the life tenant under the will, died in 1931. Upon the audit of the trustee's account it was sought to surcharge him for failure to convert the bonds into legal investments. Speaking by Mr. Justice LINN we said, (p. 423) : "There is evidence that she [the life tenant] was advised by the trustee, as late as 1925, that part of the corpus was in nonlegal investments, and, annually from 1909 to 1930, was furnished with reports, showing income received and distributed, and sales of securities during the period of the report. Certainly if, in the circumstances, with full knowledge of the facts and of her rights, Mrs. Curran was content, her appointees will not be heard to complain."

In *Coggins' Appeal,* 3 Walker 426, the beneficiaries had actually made a demand upon the trustee to convert nonlegal securities, but it was held that their failure to take action for five years thereafter, while accepting dividends, constituted an implied withdrawal of their demand and an affirmance of the investment. See also upon the general principle involved: *Detre's Estate,* 273 Pa. 341; *Brown's Estate,* 287 Pa. 499; *Linnard's Estate,* 299 Pa. 32; *Nemon's Estate,* 301 Pa. 425; *Wilbur's Estate,* supra.[2]

In view of our conclusion upon the question of acquiescence, it is unnecessary to determine whether the retention of these stocks by the trustee was negligent. However, we have reviewed the exceptants' evidence, and, upon consideration of the provisions of the will with regard to investments, it seems to us that upon this ground also the surcharge was erroneous.

In Paragraph Third, the testator directed his executor and trustee "to invest and keep invested in legal securities all *money* left by me and that which may be *realized* by my executor and trustee *from the sale* of the

---

[2] See also *O'Brien's Est.,* 18 D. & C. 501; *Maser's Est.,* 21 D. & C. 559; *Towne's Est.,* 25 D. & C. 641; *Benge's Est.,* 29 D. & C. 250.

real or *personal property."* The exceptants contend that
"money" embraces investments, but a careful reading
negatives this conclusion. In the same sentence the tes-
tator refers to "personal property," and elsewhere, to
"investments," indicating familiarity with those broader
terms. The sense in which it is used requires that the
word "money" be given its ordinary meaning of "cash"
and "currency." The clause, therefore, does not impose
any limitation upon the discretion given in the same
paragraph to the trustee *"when and as often* as [he]
shall deem prudent, to assign, dispose of and change any
of the investments of the estate and to reinvest the pro-
ceeds." The two clauses, together, show that the testator
intended the trustee to dispose of his securities at his
discretion, but, if he did so, to invest the proceeds in
legal securities.

Under the will, therefore, the trustee was empowered
to retain the transit and traction shares, and the excep-
tants must bear the burden of proving that in so doing
he was negligent. The cases of *Taylor's Estate,* 277 Pa.
518; *Kelch's Estate,* 318 Pa. 296,[3] and *Seamans' Estate,*
333 Pa. 358, have no direct application because they in-
volved the retention of nonlegal securities by fiduciaries
who had no such discretionary power.

The mere retention of these stocks which the trustee
received from the testator, was not, in itself, negligence.
They were seasoned securities favored by conservative
Philadelphia investors. From 1922 to 1931 they pro-
duced a high rate of return to the estate. In 1931, when
their value fell, the trustee could not have foreseen, in
the exercise of normally good judgment and common
skill and caution, the extent of the economic catastrophe

---

[3] In *Kelch's Estate,* 318 Pa. 296, the opinion of the court below
was affirmed by an equal division of the six justices who heard the
appeal. The adjudication reported in 21 D. & C. 204, shows that
the will there involved directed that the *entire corpus* of the trust
be invested in legal securities, and the trustee's discretion extended
only to the time of conversion.

or the difficulties which were later to assail these street railway companies. The false optimism of the period is aptly expressed in *Seamans' Estate,* supra.[4] It would have appeared to be folly for the trustee to "jettison seasoned investments" of this sort at such a sacrifice. See *Coggins' Appeal,* supra, (p. 445). At no time after 1931 could these shares have been sold except at great loss to the estate, and they represented but one-tenth of its assets. To make our after-sight the sole judge of the trustee's prudence in this matter would manifestly be unfair: *Brown's Estate,* supra, (p. 503).

As we have seen, in *Macfarlane's Estate,* supra, the trustee held nonlegal securities for seven years under circumstances similar to those here present, and we expressed the opinion that he had not been negligent, although that was not the basis of our decision. And in *Kelch's Estate,* supra, while the fiduciaries were surcharged for their failure to exercise proper care and attention in the management of the estate, the court expressly stated (p. 299) : they "were not surcharged because they retained as investments for the trust estate shares of stock in constituent companies composing the traction system in Philadelphia or shares in other corporations."

To establish negligence the exceptants rely principally upon a power of attorney executed by the trustee on March 5, 1929, to the Fidelity-Philadelphia Trust Company, and contend that he had abandoned the trust management and improperly delegated his duties. This instrument, on its face, could not have the broad effect attributed to it by the court below. It merely empowered the attorney-in-fact to hold the trust assets for safekeeping, to collect income and to distribute it under the

---

[4] In *Seamans' Estate,* Mr. Justice STERN said (p. 365): "There existed a general impression that normality would soon be restored and that prosperity was 'just around the corner.' Even the most prudent men, not foreseeing that still worse times were ahead, optimistically retained their failing investments."

terms of the will. The agent was given no power over investments, and the actual management of the trust remained at all times in the hands of the trustee. The delegation of such purely ministerial duties is a common practice in trust administration, and we all agree that it was not improper. The power bestowed by the fiduciary upon the agent was entirely dissimilar to that considered in *Bohlen's Estate*, 75 Pa. 304, and that given in *Iscovitz's Estate*, 319 Pa. 277. In *Seamans' Estate*, supra, the advisory powers of the attorney-in-fact were so broad that the fiduciary felt relieved of responsibility for investments, and the agent actually purchased securities for the estate without consulting him. Here no attempt was made by the attorney-in-fact to intermeddle with investments, and the fact that the trustee did not seek its advice is not significant, for there was nothing in the ministerial character of the agency to make such consultation needful.

We conclude, therefore, that even if the exceptants were not barred by their acquiescence, they failed to prove that the trustee was negligent.

The decree is reversed, and the record is remanded to the court below with the direction that a new schedule of distribution, eliminating the surcharge, be prepared and filed in accordance with this opinion; costs to be paid by appellees.

CONCURRING OPINION BY MR. JUSTICE STERN:

I agree that the acquiescence of appellees in the retention of the Transit Company and Traction Company stocks bars them from their present attempt to impose a surcharge upon the trustee. But I must dissent from the dictum expressed in the opinion that the trustee was empowered under the will to retain these shares and that such retention was not, in itself, negligence.

Mr. Justice LINN joins in this opinion.