### Richard CURTIS et al.

v.

### COMMISSIONER OF HUMAN SERVICES et al.

Supreme Judicial Court of Maine.

Argued Nov. 21, 1985.

Decided March 31, 1986.

Lynn Dondis (orally), Pine Tree Legal Assistance, Inc., Portland, Linda Christ, Augusta, for plaintiffs.

Diane E. Doyen (orally), Raymond E. Ritchie, Asst. Attys. Gen., Augusta, for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN and SCOLNIK, JJ.

NICHOLS, Justice.

Following a hearing in Superior Court (Kennebec County) in this class action brought by parents receiving public assistance, the Defendant, Commissioner of Human Services, appeals from an order enjoining him from filing liens against the Plaintiffs' property to secure child support debts, and overturning the Commissioner's determination of the point at which support debts were "collected" by offset against a

debtor's federal income tax refunds within the meaning of 19 M.R.S.A. §§ 491–516 (1981 & Supp. 1985–1986). One portion of the Plaintiff class cross-appeals from so much of the court's order upholding the Commissioner's determination that food stamps and fuel assistance do not constitute "public assistance" as defined in the Alternative Method of Support Act (the Act). Another group of Plaintiffs cross-appeals from a portion of the order holding that federal income tax refunds do not constitute exempt property.

We sustain the Commissioner's appeal, and we deny the cross-appeals.

As a condition to Maine's participation in the federal Aid to Families with Dependent Children (AFDC) program, the Department is required to implement an effective method of collecting child support obligations owed to it by persons receiving public assistance. See 22 M.R.S.A. § 3741 (Supp. 1985–1986); 42 U.S.C.A. §§ 602(a)(27), 656 (West Supp.1985). The 1975 enactment of the Act thus provided the State with "additional remedies for the enforcement of support for dependent children" by empowering the Department to reach the real and personal property of debtor parents in satisfaction of their child support obligations. 19 M.R.S.A. § 491 (1981). The operating principle of the Act is that a parent's receipt of public assistance for the benefit of dependent children constitutes a debt owed to the Department in the amount of the assistance received. 19 M.R.S.A. § 495(1)(A) (Supp.1985–1986). That debt, however, neither accrues nor is subject to collection during the time the responsible parent actually receives public assistance. Id. § 496.

The Plaintiff class is subdivided into six separate subclasses. The Department had determined that the named Plaintiffs owed it child support debts. Each subclass in the proceedings below challenged a particular practice of the Department in its administration of the Act.

There are three methods at the Department's disposal for collecting child support

debts. It may file liens in the amount of the debt against the support debtor's non-exempt real and personal property. 19 M.R.S.A. § 503 (1981). The Department may also make trustee attachment of a portion of the support debtor's weekly wages subject to statutory limits. 19 M.R.S.A. § 502(2) (Supp.1985–1986). Finally, pursuant to federal statutes, the Department may seize a support debtor's federal income tax refund. *See* 26 U.S.C.A. § 6402(c) (West Supp.1985); 42 U.S.C.A. § 664 (West Supp.1985). Upon notification by the Department, the Internal Revenue Service (IRS) offsets the debtor's tax refund against his support debt, sends the offset amount to the Department, notifies the debtor of the offset, and sends the debtor the remaining refund after offset. 26 U.S.C.A. § 6402(c) (Supp.1985).

On August 18, 1983, the Plaintiffs commenced this class action pursuant to M.R. Civ.P. 80C, seeking both declaratory and injunctive relief. Eleven months later the Plaintiffs moved for partial summary judgment, and the same day the parties filed an agreed statement of facts. The Superior Court enjoined the Department from filing child support liens before determining whether any of the Plaintiffs' property was exempt from foreclosure under the Act, and it ordered the Department to return tax refunds of those Plaintiffs who received public assistance between the date when their names were submitted for offset and the date when the Internal Revenue Service notified the Plaintiffs that offset had been effected. The court agreed with the Department that the food stamps and fuel assistance programs do not meet the Act's definition of "public assistance," and it also agreed that the Plaintiffs' income tax refunds were not exempt from seizure by the Department.

*Propriety of Filing Support Liens*

After the Department determines that a parent owes it a support debt, it is authorized to assert a lien in the amount of the debt against all nonexempt property of the parent. 19 M.R.S.A. § 503 (1981).[1] The lien attaches on the day of filing and may not be released unless the Department or a court so orders. *Id.* Property that would be exempt from attachment and execution is similarly exempt from lien and foreclosure under the Act. 19 M.R.S.A. § 502(1) (1981).[2] Here, the Superior Court concluded that the Department violated section 502(1) by filing support liens against the Plaintiffs' property without first determining whether some or all of the property was subject to exemption. In the agreed statement of facts the Department conceded that it indeed did not make such a determination before filing certificates of lien.

1. Section 503 provides in full:

   Twenty-one days after receipt of the notice of debt under section 500 or upon receipt of the decision under section 498, the amount stated in the notice of debt or in the decision shall be a lien in favor of the department against all nonexempt property of the responsible parent. This lien shall be separate and apart from and in addition to any other lien created by, or provided for in, this Title.
   1. *Filing.* The lien shall attach to all nonexempt real and personal property of the responsible parent when the department files, in the registry of deeds of any county or with any office appropriate for a notice with respect to personal property, a certificate which states the name of the responsible parent, his address, the amount of the child support debt accrued, the date of the decision or notice of debt by which the debt was assessed and the name and address of the authorized agent of the department who issues the lien.
   2. *Effect.* Whenever the lien has been filed and there is in the possession of any person having notice of the lien any property which may be subject to the lien, such property shall not be paid over, released, sold, transferred, encumbered or conveyed unless:
   A. A release or waiver signed by the commissioner has been delivered to the person in possession;
   B. A determination has been made in a hearing pursuant to section 515; or
   C. A court has ordered the release of the lien.

2. Among other things, the debtor's interest, not exceeding $7,500, in his residence as well as an interest no greater than $1,200 in one motor vehicle are exempt from attachment. 14 M.R.S.A. § 4422 (Supp.1985–1986).

The Commissioner's position is that the filing of a lien does not automatically make the lien attach to specific, and perhaps exempt, assets. It asserts that the Superior Court's injunction would be unduly burdensome in that there would be considerable administrative difficulties associated with making a prefiling determination whether the debtor owns exempt property. The injunction, argues the Commissioner, effectively subordinates the Department to other creditors who could obtain prejudgment attachment. The Plaintiffs, on their part, argue that the Superior Court correctly construed section 502(1). They contend that the filing of a support lien places a severe burden on the debtor parent and would make it nearly impossible for this parent to secure credit.

■ No language in the Act requires the Department to determine preliminarily whether support debtors own exempt property before it files certificates of lien. The procedures to be used by the Department in foreclosing support liens are not set out in the Act but follow general procedures for the foreclosure of other types of liens. 19 M.S.R.A. § 507 (1981). Section 507 provides that the foreclosure of a support lien on real property is thus governed by 10 M.R.S.A. §§ 3251–3269 (1980 & Supp.1985–1986), while the provisions of 10 M.R.S.A. §§ 4001–4012 (1980) govern foreclosure of support liens on personal property. Whether the lien secures real or personal property, the court has discretion to order a sale of the property, even if the property is exempt. 10 M.R.S.A. §§ 3259, 4008 (1981 & Supp.1985–1986). The foreclosure procedures do not require the Department to make a prefiling determination whether a debtor owns exempt property.

■ Such a prefiling determination would be directly contrary to the procedures normally employed in attachment proceedings relating to exempt property. The existence of an exemption does not insulate the debtor from attachment or levy of execution. *Layton v. Chase*, 82 S.D. 270, 144 N.W.2d 561, 564 (1966). The fact that the debtor's interest in particular property might be equal to or less than the exempt amount does not prevent the filing of a lien or the creation of a security interest, since the determination whether the property qualifies for exemption is usually made when a creditor attempts to attach the property. *In re Roberts*, 22 B.R. 215 (Bankr.D.Me.1982). Furthermore, if a debtor's interest in real or personal property exceeds the amount of the exemption, all of the encumbered property may be subject to a forced sale, with the debtor receiving an amount equal to the exemption plus any proceeds remaining after creditors have been satisfied. 14 M.R.S.A. § 4424 (Supp. 1985–1986).

Other creditors are thus not required to make a prefiling determination whether the property to be secured is exempt from attachment. Requiring the Department to do so would greatly hinder its lawful efforts to secure child support debts and would give all other creditors a distinct advantage. We therefore conclude that the Superior Court erred in requiring the Department to make such prefiling determinations before asserting support liens against these debtors' properties.

*Determination of Collection Date for Offset Tax Refunds*

The parties both challenge the Superior Court's application of the Act to the rather complicated mechanics of the tax refund offset procedure. The Act provides that support debts "previously incurred ... shall not be collected from any responsible parent while that parent receives public assistance for the benefit of any of his or her natural or adopted children...." 19 M.R.S.A. § 496 (Supp.1985–1986). The offset procedure is initiated in the spring of each year when the Department submits a list of support debtors to the federal Department of Health and Human Services (HHS) and sends a Notice of Offset to the support debtor. After December 15 each year, HHS sends the list of debtors to IRS, which compares the list of debtors with its own list of taxpayers entitled to federal

income tax refunds. When the match is made, IRS offsets the debt against the refund, sends the amount of the debt to the Department, notifies the debtor that the offset has occurred, and later sends the debtor the balance of the refund, if any. By regulation the Department uses the date of the IRS offset notice as the collection date for purposes of section 496. Maine Child Support Enforcement Manual, Ch. IV, § A, at 6.

The Plaintiffs argue that collection is an ongoing process beginning when a debtor's name is submitted to HHS and ending when the Maine Department of Human Services receives the offset amount from IRS. The Department contends that its selection of the date of the IRS offset notice as the date of collection is rational and prevents debtors from manipulating their financial and employment situations so as to receive public assistance for at least a portion of the time between the submittal of the debtor list to HHS and the actual offset. The Superior Court concluded that for purposes of section 496, collection began with the HHS submittal and ended with the IRS offset notice.

Ordinarily, we give great deference to an agency's construction of a statute when that agency is charged with the statute's enforcement. *Bar Harbor Banking & Trust Co. v. Superintendent of the Bureau of Consumer Protection*, 471 A.2d 292, 296 (Me.1984). The agency's construction should be upheld unless it clearly violates the legislative intent. *Id.* We conclude that the Superior Court erred in finding that collection was an ongoing process. Whether for administrative convenience or for some other reason, the Department chose the easily identifiable point of time at which the IRS cuts off the debtor's right to receive his tax refund as determinative under section 496. From the debtor's standpoint, the debt has actually been collected

at the time of the IRS offset notice. The Department's designation of the date of the offset notice as the date of collection does not violate the legislative intent of section 496.

■ The language of the statute does not support the Superior Court's broad conclusion that collection is an ongoing process. Section 496 says only that support debts "shall not be collected" while the debtor receives public assistance. There is no language prohibiting the Department from taking any steps whatsoever to collect support debts while the debtor is receiving public assistance. The absence of such language, we think, argues strongly in favor of a narrower, not a broader, construction of section 496. *See Amonte v. Amonte*, 17 Mass.App. 621, 461 N.E.2d 826, 829–30 (1984). Given the statutory language, the Department's use of the date of the IRS offset notice as the collection date was not improper. The Superior Court erred in concluding otherwise, and we must vacate its order.

*Exclusion of Food Stamps and Fuel Assistance from Definition of Public Assistance*

■ The Act prohibits the Department from collecting child support debts while the debtor parent is receiving public assistance. 19 M.R.S.A. § 496 (Supp.1985–1986).[3] The Plaintiffs argue in support of their cross-appeal that the Superior Court erred in upholding the Department's ruling that food stamps and fuel assistance were not "public assistance" within the meaning of the Act. Public assistance is defined as "money payments and medical care furnished to or on behalf of dependent children by the State...." 19 M.R.S.A. § 493(8) (1981). The court reasoned that food stamps and fuel assistance did not constitute public assistance as defined in

---

**3.** Section 496 provides in full:

A debt shall not be incurred under section 495 by any responsible parent while that parent receives public assistance for the benefit of any of his or her natural or adopted chil-

dren. A debt previously incurred under section 495 shall not be collected from any responsible parent while that parent receives public assistance for the benefit of any of his or her natural or adopted children.

the Act because neither program involved money payments. The Plaintiffs contend that the two programs should be considered public assistance because they are direct substitutes for money. We do not agree.

■ It is readily apparent that neither the food stamp program nor the fuel assistance program involves the payment of money. Money in its ordinary meaning is cash or currency, a liquid medium that enables the holder to purchase goods. *Dickson v. Commonwealth Trust Co. of Pittsburgh*, 361 Pa. 612, 65 A.2d 408, 409 (1949); *Riverside Nat. Bank v. Lewis*, 603 S.W.2d 169, 174 (Tex.1980). By contrast, a recipient of food stamps is given coupons which may only be used to purchase food from approved retail establishments. 7 U.S.C.A. § 2013(a) (West Supp.1985). Participants in the fuel assistance program have their fuel bills paid by the State, which reimburses the fuel supplier. 42 U.S.C.A. § 8624(b)(7) (West 1983). Neither benefit resembles a money payment because each is of limited liquidity. 19 M.R.S.A. § 493(8), quoted above, is explicit that public assistance means money payments and medical care. We decline to supply a broad construction to such a clearly and narrowly drafted definition.

4. That section provides in full:
   The following exemptions shall apply.
   1. Property otherwise exempt. Except as provided in subsection 2, any property otherwise exempt from trustee process, attachment and execution shall be exempt from an order to withhold and deliver, administrative seizure and disposition, and lien and foreclosure under this subchapter.
   2. Weekly earnings. Weekly earnings of the responsible parent, subject to an order to withhold and deliver, shall not exceed the amount by which the disposable earnings of the responsible parent for that week exceed 30 times the federal minimum hourly wage prescribed by the United States Code, Title 29, Section 206(a)(1). The maximum part of the aggregate disposable earnings of a responsible parent for any workweek which is subject to garnishment, pursuant to section 504, to enforce any decision entered pursuant to section 498, section 500 or section 515, shall not exceed:

*Federal Income Tax Refunds as Exempt Wages or Property*

The Plaintiffs also argue that the tax refund offset procedure, described above in greater detail, violates the exemption provisions of section 502.[4] They argue that their offset tax refunds constitute property exempted from administrative withholding under 14 M.R.S.A. § 4422 (Supp.1985–1986) and, alternatively, that the refunds represent weekly earnings withheld in violation of section 502(2). The Superior Court did not agree and concluded that the Plaintiffs' tax refunds were not exempt under either sections 502 or 4422. We agree with the Superior Court.

■ Section 4422 sets out the specific kinds of property that are exempt from attachment. Payments from several sources, such as social security benefits, veterans' benefits, unemployment compensation, and certain money damages awards, are specifically exempt. 14 M.R.S.A. § 4422(13), (14) (Supp.1985–1986). The statute does not list federal income tax refunds as exempt property. The enumeration of specific types of money payments as exempt leads us to conclude that the Legislature intended that only those payments be exempt. *See Lee v. Massie*, 447 A.2d 65, 68 (Me.1982) (expression of one term in statute is the exclusion of another).

A. When the individual is supporting his spouse or dependent child, other than a spouse or child with respect to whose support such order is used, 50% of that individual's disposable earnings for that week; and
B. When the individual is not supporting such a spouse or dependent child described in paragraph A, 60% of that individual's disposable earnings for that week.
With respect to the disposable earnings of any individual for any workweek, the 50% specified in paragraph A shall be deemed to be 55% and the 60% specified in paragraph B shall be deemed to be 65% if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the 12-week period which ends with the beginning of that workweek.
19 M.R.S.A. § 502 (1981 & Supp.1985–1986).

Accordingly, we decline to find that offset income tax refunds are exempt property under section 4422.[5]

Neither are we persuaded that the Plaintiffs' offset tax refunds represent weekly earnings withheld in violation of the limitation in section 502(2). In support of this contention, the Plaintiffs draw an analogy between the garnishment of wages and the weekly withholding of federal income tax from an employee's paycheck. They argue that the tax withheld is similar to garnished wages because it goes toward the satisfaction of a legal obligation. While it is superficially appealing, the analogy does not withstand analysis.

▮ Part of the amount withheld each week from an employee's paycheck goes towards the satisfaction of his tax liability. The remaining amount is not wages; rather, it is a form of debt owed by the government to the employee. *In re Verill,* 17 B.R. 652, 655 (Bankr.D.Md.1982); *see Kokaszka v. Belford,* 417 U.S. 642, 649–51, 94 S.Ct. 2431, 2435–2436, 41 L.Ed.2d 374 (1974) (tax refund not equivalent to wages under Consumer Credit Protection Act). Furthermore, the amount of weekly wages exempt from seizure is computed using the "disposable earnings of the responsible parent" as a base figure. 19 M.R.S.A. § 502(2) (Supp.1985–1986). The term "disposable earnings" is understood to mean that portion of a person's income remaining after payment of taxes and other legal obligations. *Kokaszka v. Belford,* 417 U.S. at 649 n. 8, 94 S.Ct. at 2435, n. 8; Black's Law Dictionary 423 (5th ed.1979). Under the Act, a support debtor's earnings are garnished based on the debtor's after-tax income. An income tax refund, unlike wages that have been subjected to trustee attachment, bears no relation to the amount of a support debtor's weekly earnings. We conclude that the Plaintiffs' argument lacks merit.

5. The Plaintiffs also argue that their tax refunds qualify for the $400 exemption for other property specified in section 4422(15). There is nothing in the record, however, that shows whether

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.

any Plaintiff ever claimed the exemption and had it denied by the Department. The issue is therefore not before us.